IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT F. SARTORI,

               Plaintiff,

    vs.                                      CIVIL NO.  12-515 JB/LFG

SUSAN C. LITTLE & ASSOCIATES, P.A.,
and BAC HOME LOANS SERVICING, LP,

               Defendants.

## REPORT AND RECOMMENDATION[1]

THIS MATTER is before the Court on *pro se* Plaintiff Robert F. Sartori's ("Sartori")

"Motion for Leave to Amend Complaint."  [Doc. 82]. Sartori seeks leave of the Court to allow him

to file a Third Amended Complaint.

Defendant Susan C. Little & Associates, P.A. ("SCLA") filed a response to the motion [Doc.

83] disputing Sartori's representations concerning its concurrence in allowing the motion.  However,

after giving reasons why the amended complaint should not be authorized, SCLA states, "SCLA is

well aware of the liberal rules governing amendments of pleadings and will not otherwise oppose

Plaintiff's Motion."  [Doc. 83, at 2].

---

[1]Within fourteen (14) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation.  A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation.  If no objections are filed, no appellate review will be allowed. *See, e.g.*, Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).

Bank of America, N.A., as successor-by-merger of BAC Home Loans Servicing, LP ("BANA"),[2] filed a Response in Opposition [Doc. 89] and a Request for Judicial Notice [Doc. 88]. Sartori did not file a reply and the deadline for doing so expired long ago.

After careful consideration of the pleadings and pertinent law, the Court recommends denial of Sartori's motion for the reasons set out below.

## **Background**

On January 24, 2008, Sartori executed a note and mortgage in the principal amount of $106,959. These obligations were secured by property located at 131 Ventura Road, Belen, New Mexico. [Doc. 88-1, Ex. A]. New Day Financial, LLC is the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") is the lender's nominee, successor and assign. [Id.]. On July 28, 2009, MERS assigned this mortgage to BAC Home Loans Servicing, LP. [Doc. 88-2, Ex. B].

Sartori defaulted on his mortgage, and, ultimately, the property was foreclosed upon. [Doc. 89, at 2.] BAC retained SCLA to file a foreclosure action against Sartori on July 29, 2009 in the Thirteenth Judicial District Court for the State of New Mexico. [Doc. 75 (Joint Status Report), at 3; Doc. 8, Ex. B (Susan Little's Affidavit), at ¶ 11.] On September 16, 2009, Sartori was personally served with the complaint and answer [Doc. 8, Ex. B, at ¶ 12]. On September 16, 2009, after receipt of service, Sartori contacted and spoke with SCLA.[3] Sartori did not answer the complaint; did not deny the allegations; did not assert counterclaims; and did not appear for hearings in the State

---

[2]The Court generally refers to Defendant BAC Home Loans Servicing, LP as BANA in this Order.

[3]The content of this telephone call is disputed. Sartori contends the call was made to dispute the debt and demand verification. [*See* Doc. 82 (proposed Third Amended Complaint), at ¶ 33, 34.] SCLA asserts that Sartori called seeking advice in reference to the lawsuit and was told that SCLA could not provide him with legal advice. [Doc. 8, Ex. B, at ¶ 13 and telephone log.] For purposes of this motion, it is clear that Sartori had notice of the lawsuit.

district court.  Instead, when he failed to respond, a default was declared, the State court appointed a special master, and the property was sold. [Doc. 8, Ex. B, at ¶ 14.]

On August 10, 2011, Sartori filed his original complaint against SCLA and BANA in the United States District Court for the Northern District of Mississippi. [Doc. 1.]  On August 18, 2011, Sartori filed a First Amended Complaint [Doc. 4], and on October 5, 2011, he attempted to file a Second Amended Complaint [Doc. 10].  The federal district court in Mississippi filed an Order striking the Second Amended Complaint. [Doc. 14.]

On December 2, 2011, Sartori filed a Second Amended Complaint. [Doc. 29.] The Second Amended Complaint names two Defendants – SCLA and BAC Home Loans Servicing, L.P.  He asserted violations of the Fair Debt Collections Protection Act ("FDCPA"), Fair Credit Reporting Act ("FCRA"), and the Telephone Consumer Protection Act ("TCPA").

On May 15, 2012, the federal district court in Mississippi transferred the case to the United States District Court for the District of New Mexico. [Doc. 45.]  In the Joint Status Report ("JSR"), filed October 24, 2012, BANA states that the parties agreed that Sartori was allowed until November 1, 2012, to file another motion to amend the pleadings. [Doc. 89, at 2.] However, it appears from the JSR language, that BANA opposed Sartori's stated intention to file another motion to amend. [Doc. 75, at 2.]

Sartori's motion to for leave to file a Third Amended Complaint, filed November 5, 2012 [Doc. 82, at 1], states he "conferred with opposing counsel and found no objection" to the filing of his motion.  SCLA states that Sartori did not accurately reflect the record as he never requested concurrence of SCLA.  According to SCLA, at a meet and confer held October 9, 2012, and a Rule 16 Scheduling Conference held October 31, 2012, Sartori indicated he wanted to file an amended complaint and add additional parties, but he never identified the proposed additional parties nor

3

provided SCLA with a copy of the proposed Third Amended Complaint. Without such information, SCLA states it was unable to express concurrence or opposition to the motion. Notwithstanding Sartori's failure to obtain concurrence of the opposing parties, SCLA observes the liberal rules government amendment of pleadings and states it will not otherwise oppose the motion to amend. [Doc. 83, at 2, 3.]

BANA opposes Sartori's motion for leave to amend, arguing that the claims Sartori seeks leave to add "fail to state legally cognizable theories against Defendant BANA, rendering Plaintiff's Motion futile." [Doc. 89.] BANA also asserts that Sartori did not confer with opposing counsel before filing the motion. [Doc. 89, at 2.]

## Proposed Amendment

Sartori's motion for leave to amend states that he seeks to amend so as to correct mistakes, add parties, and add counts. [Doc. 82, at 1.] For example, Sartori alleges that he discovered violations committed against him by "Susan C. Little, Deborah A. Nesbitt, Denise Snyder, and Bank of America, N.A., who should be added as Defendants in this action."[4] [Doc. 82, at 1.] He also asks to add counts of wrongful foreclosure and conversion, and alleged additional violations of the FCRA

---

[4]Because Sartori named the "new Defendants" primarily in connection with the attempted conversion claim [proposed Third Amended Complaint, ¶¶ 64-69], and the Court recommends denial of the amendment, there is no basis to add the proposed new Defendants. This is particularly true as Sartori's proposed amendments did not identify who Nesbit or Snyder are in relation to the new claims. With respect to Sartori's attempt to name Susan C. Little as an individual defendant in addition to the law firm already named, the Court finds no basis to add Ms. Little individually.

and the TCPA.[5]  [Doc. 82, at 2.] Sartori further notes that he seeks to restructure the order of

paragraphs to better reflect the accuracy of the claims and events.[6] [Id.]

## I.    <u>Legal Standard</u>

Rule 15(a) provides that after an opposing party files a responsive pleading, a "party may

amend its pleading once as a matter of course," and in other cases, may amend its pleading "only

with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a).  Rule 15

further states that the "court should freely give leave [to amend] when justice so requires."  Fed. R.

Civ. P. 15(a).  The Tenth Circuit Court of Appeals advised that district courts should grant a plaintiff

leave to amend when doing so would yield a meritorious claim.  *See* <u>Curley v. Perry</u>, 246 F.3d 1278,

1284 (10th Cir.), *cert. denied*, 534 U.S. 922 (2001).

While the Court is  "mindful of the spirit of the federal rules of civil procedure to encourage

decisions on the merits rather than on mere technicalities," there are limits to allowing amendment

of pleadings.  For example, a court may deny leave to amend "upon a showing of undue delay, bad

faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party, or futility of amendment."  <u>Castleglen, Inc. v. Resolution Trust</u>

<u>Corp.</u>, 984 F.2d 1571, 1585 (10th Cir. 1993) (*citing* <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

This District advises that a court should deny leave to amend under Rule 15(a), where the proposed

"amendment would be futile."  <u>Back v. ConocoPhillips Co.</u>, 2012 WL 6846397, at *11 (D.N.M.

Aug. 31, 2012) (*citing* <u>Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv.</u>, 175 F.3d 848, 859

---

[5]The proposed amended complaint does not specify what claims under the FCRA and the TCPA Sartori seeks to add.  Thus, the Court finds no basis for the proposed amendment of additional alleged violations of those statutes.

[6]Sartori's proposed amended complaint does not provide any clarification or better accuracy of the claims.  Thus, this argument provides no support for the amendment.

(10th Cir. 1999)).  An amendment is "futile" if the pleading "as amended, would be subject to dismissal." Id. (citations omitted).  Stated differently, a proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  3 J. Moore, Moore's Federal Practice ¶ 15.08[4].

**II.**    **Analysis**

BANA argues that Sartori's amendments would be futile and subject to dismissal, and also that Sartori unduly delayed in attempting to bring the new claims. [Doc. 89, at 4.] The Court addresses the issue of futility below, agreeing that the proposed amendments would be futile.  In addition, the Court states briefly that Sartori supplied no reasons why he could not have attempted to add the proposed claims or "clarification" earlier, other than to summarily state he learned of additional violations "as a result of ongoing proceedings."  This is insufficient.  In addition to finding that the proposed amendments would be futile, the Court also concludes that Sartori unduly delayed in attempting to make the proposed amendments.

A.    Wrongful Foreclosure

Sartori's proposed wrongful foreclosure claim is premised on provisions of the FDCPA and the Uniform Commercial Code ("UCC") [proposed Third Amended Complaint, at ¶¶ 64-69]. BANA first asserts that Sartori's proposed amended claim for wrongful disclosure fails to state a claim against BANA; thus it is futile.  According to BANA, Sartori alleges that BANA was barred from foreclosing on his property under the FDCPA and UCC § 3-501.  BANA states that Sartori also claims BANA lacked standing to foreclose because MERS had no authority to assign the mortgage.

BANA argues that Sartori failed to allege how the FDCPA or UCC § 3-501 would have prevented BANA from foreclosing on his property or would have prevented judicial approval of that foreclosure.  BANA asserts that FDCPA does not apply to mortgage foreclosures and that BANA

is not a debt collector as defined under the code. In addition, the UCC does not apply to mortgage disclosures. [Doc. 89.]

While correct that the FDCPA makes it unlawful for debt collectors to engage in certain activities while collecting debts, those activities have no bearing on foreclosure actions. *See* 15 U.S.C. § 1692g; and Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (10th Cir.) ("The legislative history of § 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."), *reh'g granted in part*, 761 F.2d 237 (1985). *See also* Hulse v. Ocwen Fed. Bank FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property."). These authorities make clear that filing a foreclosure action is not conduct prohibited by the FDCPA. Accordingly, allowing Sartori to amend his complaint to assert a wrongful foreclosure action should not be allowed as the new claim would be futile.

In addition, with respect to Sartori's reliance on UCC § 3-501, the Court agrees that nothing in the proposed complaint demonstrates how the UCC has any effect on a mortgage foreclosure. The portion of the UCC cited by Sartori, § 3-501, relates to presentment of an instrument. UCC § 3-501(a). This section addresses the method for production of a negotiable instrument for acceptance for payment. *See also* 2 James J. White and Robert S. Summers Uniform Commercial Code, § 16-8, at 100 (4th ed. 1995).

Moreover, the UCC does not govern foreclosure actions; rather, the common law of the state where the property is located, is the applicable law.  In this case, when Sartori defaulted on his note and mortgage, the foreclosure action was governed by New Mexico State law relating to real property.  *See* NMSA 1978, §§ 58-21A-3, 58-21A-6.

Sartori also seeks to amend his complaint to assert wrongful foreclosure, based on his position that BANA lacked standing to foreclose because MERS allegedly had no authority to assign the mortgage to BANA.   [proposed Third Amended Complaint, ¶ 68.]  This allegation, however, is not supported by law.  MERS does, indeed, have authority to assign the mortgage.  *See* <u>Bank of America v. Quintana</u>, 2012 WL 1252723, at *4 (N.M. Ct. App. Mar. 12 2012) (unpublished) (provisions of mortgage gave MERS authority to assign), *cert. granted,* 294 P.3d 1244 (N.M. June 5, 2012).  *See also* <u>Wellington v. Mortgage Elec. Registration Sys., Inc.</u>, 2012 WL 2327671, at *1 (N. M. Ct. App.  2012) (unpublished) (undisputed that MERS was mortgagee and nominee), *cert. denied*, 295 P.3d 600 (N.M. 2012); <u>Gomes v. Countrywide Home Loans, Inc.</u>, 192 Cal. App. 4th 1149, 1156 n.7 (rejecting plaintiff's argument that MERS lacked standing in California to initiate nonjudicial foreclosure), *cert. denied,* 132 S.Ct. 419 (2011).

Here, in Sartori's mortgage, he agreed that New Day Financial, LLC "and its assigns" could enforce the note by foreclosing the mortgage.  *See* [Doc. 88, Ex. A, at 1 (stating that "MERS is acting for . . . Lender and Lender's successor and assigns") and Ex. A, at 3 (stating that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to the right to foreclose and sell the Property").]  The mortgage further provides that MERS "is the mortgagee under this Security Instrument. [Doc. 88, Ex. A, at 1.] Sartori agreed when he executed the mortgage that he "understands and agrees that MERS holds . . . legal title to the interests granted by Borrower in this Security Instrument . . . ."

[Id.] Further, the undisputed facts show a valid assignment of the mortgage note from the lender to BAC Home Loans Servicing, L.P. on July 28, 2009 (now to Bank of America, N.A., successor by merger to BAC), that later initiated the foreclosure proceedings. [Doc. 88, Ex. B.] Thus, it is clear that Sartori's contention that BANA lacked standing to prosecute the mortgage, due to the inaccurate allegation that MERS had no authority to assign the mortgage to BANA, is without merit.  It follows that amendment would be futile.

        B.    <u>Conversion</u>

Sartori attempts to add a new claim of conversion against BANA. [proposed Third Amended Complaint, at ¶¶ 70-73.] According to BANA and its assertion that it did not exercise unlawful dominion over Sartori's monies, Sartori failed to allege any facts to support a claim of conversion. BANA contends that it had a legal and contractual right to receive the monthly loan payments from Sartori and that when it ceased doing so, it properly exercised its contractual right to foreclose on the property. [Doc. 88, Ex. B.]

In <u>Muncey v. Eyeglass World LLC</u>, 289 P.3d 1255, 1262 (N.M. Ct. App. 2012), *cert. denied* (N.M. Nov. 01, 2012), the New Mexico Court of Appeals set out the definition of a claim of conversion.

> Conversion is "the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *[See also]* <u>Taylor v. McBee</u>, 78 N.M. 503, 506, 433 P.2d 88, 91 (Ct.App. 1967) ("Conversion is the wrongful possession of, or the exercise of dominion over, a chattel to the exclusion or in defiance of the owner's right thereto; or an unauthorized and injurious use thereof; or the wrongful detention after demand therefor by the owner."). We note that our Supreme Court has also similarly defined conversion. *See* <u>In re Yalkut</u>, 2008–NMSC–009, ¶ 25, 143 N.M. 387, 176 P.3d 1119 (stating that, similar to a misappropriation of property, "conversion is the unlawful exercise of dominion and control over

> property belonging to another in defiance of the owner's rights, or
> acts constituting an unauthorized and injurious use of another's
> property, or a wrongful detention after demand has been made"

Id. (citations omitted).

In support of the new claim of conversion, Sartori did not allege any basis for why or how his loan repayments constituted converted property when he cannot and does not deny receiving the benefit of the mortgage, *i.e.,* his property.  Moreover, he cannot and does not deny that he had a contractual duty to repay the loan. [Doc. 88, Ex. A.] In addition, Sartori did not allege facts demonstrating wrongful conduct by Defendants to support a claim of conversion.  Because the newly proposed conversion claim is insufficiently alleged, it would be futile to allow the attempted amendment.

      C.      <u>Jurisdictional Bar</u>

Equally important in the Court's analysis for proposing denial of Sartori's motion is that the attempted common-law complaints, unlawful foreclosure and conversion, strike at the very heart of the State Court's foreclosure action.  Any ruling by this Court on alleged wrongful foreclosure and conversion would interfere with the State Court's authority to foreclose on the mortgage or to order the sale of the realty.

Sartori had the right, indeed, the duty, to assert his claims against Defendants in the underlying foreclosure action.  He opted not to answer, not to assert affirmative defenses, and not to assert what would otherwise be a compulsory counterclaim.  [Doc. 8, Ex. B, at ¶ 14.] Subsequent to the issuance of judgment in the State Court case, Sartori did not seek to set aside the default, nor did he seek appellate review of the court's decision granting the request for foreclosure and authorizing the sale of the property.  The time for taking an appeal long ago expired.  The State litigation is over.

Allowing Sartori's Third Amended Complaint to add state law claims at this juncture implicates the Rooker-Feldman jurisdictional bar.  *See* Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–416 (1923).  The Rooker-Feldman doctrine prohibits the losing party in State Court "from seeking what in substance would be appellate review of the state judgment in the United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights."  Knox v. Bland, 632 F.3d 1290, 1292 (10th Cir. 2011) (*cited with approval* in Morkel v. Davis, 2013 WL 1010556, at *1 (10th Cir. Mar.15, 2013)) (unpublished).

As our circuit recently noted in Morkel, Rooker-Feldman has a narrow scope, but applies when a state court judgment is final.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Guttman v. Khalsa, 446 F.3d 1027, 1032 (10th Cir. 2006) ("Rooker-Feldman applies only to suits filed after state court proceedings are final.")

Sartori's proposed wrongful foreclosure and conversion claims seek to challenge the very ruling made by the State Court in foreclosing the mortgage and the subsequent sale at the steps of the courthouse.  Should this Court make any determination that the foreclosure was somehow improper or that Defendants converted Sartori's real estate, the federal court would, in effect, be sitting as an appellate court reviewing a State Court's judgment.  This is improper.  The State Court proceedings are final; there is no ongoing State Court proceeding.  Therefore, Rooker-Feldman is applicable, and this Court is prohibited from conducting an appellate review of the State Court's final judgment.

The Court further notes that this case is based on federal questions involving provisions of the FDCPA, the FCRA, and the TCPA.  These consumer protection statutes are founded in federal law.  Sartori now seeks to append two New Mexico State common law claims to his federal action, wrongful foreclosure and conversion.  The regulation, management and oversight of real property

11

interests is uniquely a matter of state concern. *See* <u>Preseault v. I.C.C.</u>, 494 U.S. 1, 22 (1990) (state law is the traditional source of the real property interests); <u>Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta</u>, 458 U.S. 141, 152-53 (1982) (noting that real property law is a matter of special concern to the states); <u>Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.</u>, 429 U.S. 363, 378 (1977) ("state law governs issues relating to this property, like other real property, unless some other principle of federal law requires a different result"). Sartori did not demonstrate that the New Mexico State Court was an inadequate forum for raising his wrongful foreclosure or conversion claims, that he was prohibited from appealing the final order of the State Court, that he was prevented from filing an interlocutory appeal. The appropriate forum for resolution of Sartori's common law claims was in the New Mexico State Courts.

The proposed Third Amended Complaint also seeks injunctive relief by requesting that this Court order the return of Sartori's real estate. [proposed Third Amended Complaint, ¶ 72.] Thus, Sartori again requests that this Court intervene after the fact in State Court proceedings affecting real property interests in the State of New Mexico, and, in effect, overturn the trial court's decision and unscramble the egg. This, the Court declines to do.

<u>**Recommendation**</u>

The undersigned Magistrate Judge recommends that Sartori's motion to file a Third Amended Complaint be denied for the reasons stated herein, including the Court's observation that a federal court should avoid encroachment on state court determinations.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

12