IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT F. SARTORI,

                    Plaintiff,

    vs.                                        CIVIL NO.  12-515 JB/LFG

SUSAN C. LITTLE & ASSOCIATES, P.A.,
and BAC HOME LOANS SERVICING, LP,

                    Defendants.

## **REPORT AND RECOMMENDATION**[1]

### **Introduction**

THIS MATTER[2] is before the Court on Defendants' Motion for Summary Judgment, filed

May 1, 2013. [Doc. 169.]  Bank of America, N.A., as successor by merger to BAC Home Loans

Servicing, LP, formerly known as Countrywide Home Loan Servicing, LP ("BANA") seeks

summary judgment against *pro se* Plaintiff Robert F. Sartori's ("Sartori") and asks that his

Amended Complaint be dismissed, with prejudice.  Sartori filed an out-of-time response [Doc. 176],

as discussed *infra*, and BANA filed a reply [Doc. 180.] After careful consideration of the pertinent

law and pleadings with exhibits, the Court recommends that BANA's summary judgment motion

---

[1]Within fourteen (14) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1)(C), file written objections to such analysis and recommendation.  A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation.  If no objections are filed, no appellate review will be allowed. *See, e.g*, Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) and United States v. One Parcel of Real Prop., 73 F.3d 1057, 1060 (10th Cir.) ("firm waiver" rule followed in Tenth Circuit holds that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review), *cert. denied*, 519 U.S. 909 (1996)

[2]The trial judge, the Honorable James O. Browning, referred this case to the undersigned Magistrate Judge to conduct any hearings, perform an analysis, and issue a report and recommendation. [Doc. 136.]

be granted and that Sartori's Amended Complaint and all claims against BANA be dismissed, with prejudice.[3]

The Court observes that Sartori proceeds *pro se*. While a *pro se* litigant's pleadings are liberally construed, Garza v. Davis, 596 F.3d 1198, 1201 n. 2 (10th Cir. 2010), this liberal construction does not give license for a *pro se* litigant to ignore the Federal Rules of Civil Procedure. To the contrary, a *pro se* litigant is required to comply with the same rules of practice and procedure that are applicable to any licensed attorney. *See* Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) ("Pro se parties [must] follow the same rules of procedure that govern other litigants."). Sartori's late response to the summary judgment motion violated a number of this District's local rules

First, Sartori was required to file his response within fourteen calendar days after service of the motion. D.N.M.LR-Civ. 7.4(a). On May 30, 2013, Sartori filed a response to BANA's May 1, 2013 summary judgment motion. Thus, he filed the response about ten days after the deadline. Sartori's out-of-time filing was without the consent of opposing counsel [Doc. 180, at 2] or permission from the Court.

Sartori's failure to file a timely response constitutes consent to grant the motion. D.N.M.LR-Civ. 7.1(b). However, our Circuit holds that it is inappropriate to grant summary judgment simply because the nonmoving party failed to file a response. *See, e.g.,* Murray v. City of Tahlequah, Okla., 312 F.3d 1196, 1200 (10th Cir. 2002) (if nonmoving party fails to respond, the district court may

---

[3]The Court already filed a recommendation to dismiss Sartori's Amended Complaint and all claims against Defendant Susan C. Little & Associates, P.A. [Doc. 155.] Sartori filed objections [Doc. 165], and that matter is pending before Judge Browning. Also pending before the trial judge is the undersigned Magistrate Judge's recommendation that Sartori's motion to file an amended complaint be denied, along with Sartori's objections. [Docs. 152, 161.]

not grant summary judgment motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial) (citation omitted).  Stated differently, granting summary judgment on the sole ground that the nonmovant failed to respond or failed to file a timely response would constitute a sanction. Dismissal of a case as a sanction should only occur as a last resort after the Court considers the factors in Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992), and Meade v. Grubbs, 841 F.2d 1512, 1520-21 (10th Cir. 1988), *abrogated on other grounds by* Schneider v. City of Grand Junction Police Dept., --- F.3d ----, 2013 WL 2421071 (10th Cir. 2013).

In addition to filing a late response, Sartori's response violated the page limitation imposed by D.N.M.LR-Civ. 7.5.  Response briefs are not to exceed 24 pages, and Sartori's response is 33 pages.[4]  [Doc. 176.]   The excess pages were filed without authorization or leave of Court. Furthermore, Sartori violated Local Rule 10.5 that limits exhibits to a total of fifty (50) pages. Sartori's exhibits, including affidavits and documents, exceed the 50-page limit by a few pages. However, the Court observes that BANA also violated this rule by attaching voluminous exhibits to a declaration in support of summary judgment.[5]

The Court will not grant summary judgment in favor of the moving party due to Sartori's late and unauthorized response, and instead, reviews the motion, with all exhibits, on the merits.

---

[4]Sartori may have pasted his response together from other pleadings.  For example, his paragraphs are not numbered sequentially.  His response begins with paragraphs 1-7, and then reverts to paragraph 2 from page 5 on. [Doc. 176.] This makes his response even more difficult to decipher.  Moreover, Sartori's response does not contain a "concise statement of material facts, or a statement of each fact in dispute that is numbered sequentially, as required by D.N.M.LR-Civ. 56.1(b).

[5]BANA filed three separate pleadings, *i.e.,* its summary judgment motion [Doc. 169], a 3-page declaration of a BANA assistant vice president [Doc. 170], and another 3-page declaration of defense counsel [Doc. 171] with 123 pages of exhibits. [Doc. 171-1.] A party does not escape the exhibit page limit merely by attaching exhibits to a separate declaration in support of summary judgment.  The Court cautions Sartori and defense counsel to abide by the local rules in the future.

## Summary Judgment Standard

Summary judgment provides courts with a means by which "factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). Rule 56(a) requires the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2012).  The party seeking summary judgment has an initial burden to show that there is an absence of evidence to support the non-moving party's case.  *See* <u>Kannady v. City of Kiowa</u>, 590 F.3d 1161, 1168-1169 (10th Cir. 2010) ("moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.") (internal quotation marks removed).

Upon meeting that burden, the non-moving party must identify specific facts that show the existence of a genuine issue of material fact.  <u>Id.</u>  The non-moving party may not rest upon mere conjecture, allegations, or denials, nor may a party rely solely on argument or contentions. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  *See* <u>Pasternak v. Lear Petroleum Exploration, Inc.</u>, 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment.") (citation omitted).  *See also* <u>Nahno-Lopez v. Houser</u>, 625 F.3d 1279, 1283 (10th Cir. 2010) ("in response to a properly supported motion for summary judgment, a non-movant must produce sufficient evidence for a reasonable trier of fact to find in its favor at trial on the claim or defense under consideration").  The evidence produced must be competent and legally admissible.  *See* <u>Celotex</u>, 477 U.S. at 323 n.3.

The Court further observes that the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). Stated differently, "the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." Kannady, 590 F.3d at 1169 (citation omitted). *See also* Celotex, 477 U.S. at 323 (Rule 56 standard requires the court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element to prove that party's case, and on which that party will bear the burden of proof at trial.")

As recently explained by the federal Utah District Court, in Wilcox v. Career Step, LLC, __ F. Supp. 2d __, 2013 WL 839936, at *4 (D. Utah Mar. 6, 2013) (unpublished) –

> . . . . now as before the 2010 amendments to Rule 56, the court must perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. "When applying this standard, we examine the factual record in the light most favorable to the party opposing summary judgment." Kannady, 590 F.3d at 1168 (*quoting* Belhomme v. Widnall, 127 F.3d 1214, 1216 (10th Cir. 1997)).

Thus, while the Court examines the factual record in the light most favorable to Sartori, mere argument, assertions, conjecture, or the existence of a scintilla of evidence in support of his position will not demonstrate a genuine issue of material fact for trial. Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006) (citations and quotations omitted).

## Summary Judgment Motion

Defendant contends it is entitled to summary judgment on Sartori's Amended Complaint that asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), Fair Credit Reporting Act

("FCRA"), and the Telephone Consumer Protection Act (TCPA").  There is no dispute that Sartori's lawsuit is predicated on the ultimate foreclosure of real property he owned in New Mexico and the related credit reporting and communications from his lender BANA, after he defaulted on the mortgage. [*See, e.g.,* Doc. 75, at 1, 3; Doc. 171-1, Ex. A (Note) and Ex. B (Mortgage).]  Sartori refinanced his mortgage on the subject property in January 2008, and took out $50,000 or less in cash. [Doc. 171-7 (Sartori Dep.), at 83.]  He subsequently defaulted on the terms of the loan.[6] BANA instituted a judicial foreclosure against him in July 2009.  After Sartori failed to respond to the lawsuit, the property was sold at a foreclosure sale in January 2010.  Over a year and a half after that foreclosure sale, Sartori brought the present lawsuit.

Sartori attempts to contest some of the above-stated summary of underlying facts, along with other allegations by BANA.  However, with respect to BANA's Undisputed Material Facts ("UMF"), Sartori did not "refer with particularity to those portions of the record" on which he relies to successfully controvert any of BANA's UMFs.  And, as discussed in detail below, he fails to

---

[6]Sartori attempts to dispute that he defaulted on the loan in question.  During his deposition, when asked about a default, he stated he was neither aware of defaulting on any note or mortgage relating to his Belen, New Mexico property and not aware of having stopped making payments on the property/mortgage. [Doc. 171-7, at 57.] he thought he made payments "[p]robably by check, but I don't recall." [Id.] When the subject was explored in more depth in his deposition, Sartori testified that he did not make any payments on the property in question in January 2009 because he did not believe he owned any money "to anyone in January of 2009." [Id., 15 91.] When asked if he received any documents stating he did not owe any money of the property as of January 2009, Sartori answered "No.  But it's my understanding that someone needs to prove that you do owe money, not that they need to tell you you don't."  Counsel then asked Sartori if he was making payments prior to January 2009, and he responded "Not that I recall."  "I don't believe I was making any payments."  He did not recall receiving any documentation stating he paid off his loan at that point. [Id., at 91.] Sartori's inconsistent deposition testimony fails to raise a genuine issue of fact with respect to defaulting on his loan.

submit competent and admissible evidence to raise a genuine issue of material fact as to any of the claims set out in his Amended Complaint.[7]

### BANA's Undisputed Material Facts

In support of BANA's Motion for Summary Judgment, it submits the following material facts, that are supported by competent, admissible evidence.[8]

1.  On January 24, 2008, Plaintiff executed a note ("Note") and mortgage ("Mortgage") (collectively, the "Loan") evidencing a debt in the amount of $106,959 secured by real property commonly described as 131 Ventura Road, Belen, New Mexico 87001 (the "Property").

2.  The Note and Mortgage contain Plaintiff's signature.

3.  The terms of the Mortgage identified New Day Financial, LLC ("New Day") as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee of New Day and its successors and assigns.

4.  On or about February 13, 2008, Countrywide Home Loans Servicing, LP began to service Plaintiff's Loan.  On or about April 27, 2009, Countrywide Home Loans Servicing, LP changed its name to BAC Home Loans Servicing, LP.  On or about July 1, 2011, BAC Home Loans Servicing, LP was merged with and in to Bank of America, N.A.

5.  On or about February 4, 2009, Plaintiff called BANA and provided telephone number (530) 305-3346 as BANA was unable to reach him at the prior number listed on his account.

---

[7]Sartori's closing paragraph in his response demonstrates his lack of understanding about what is required of him at the summary judgment stage. [Doc. 176, at 33.] He states that "it should be seen that BANA has failed to show that there are no material facts at issue for any element of Plaintiff's Complaint." [Id.] Once BANA demonstrates "an absence of evidence" to support Sartori's case, through undisputed material facts, which it did here, Sartori then must identify specific facts that show the existence of a genuine issue of material facts in relation to the required elements of his claims.  Sartori failed to present such facts or to satisfy Rule 56(c) requirements.

[8]The Court repeats BANA's statement of UMFs but does not include citations to record evidence. However, BANA cited that evidence that is contained in its declarations and exhibits. [*See, e.g.,* Doc. 169, at ¶¶ 1-20; Docs 170, 171.]

6.  On or about May 15, 2009, Plaintiff called BANA to discuss his loan, the monthly payment amount and when it was due, the Countrywide to Bank of America transition, and requested a copy of his loan documents.

7.  Between February 12, 2009 and July 22, 2009, BANA called Plaintiff at the provided telephone number (530) 305-3346 regarding his loan and the delinquency.

8.  Between February 4, 2009 and July 22, 2009, Plaintiff never made a written or verbal request for BANA to not call him at (530) 305-3346.

9.  On or about July 28, 2009, MERS executed an Assignment of Mortgage to BANA.

10.  On July 29, 2009, Susan C. Little & Associates ("SCLA") filed a Complaint for Foreclosure against Plaintiff related to the Property.

11.  On January 5, 2010, the Mortgage was foreclosed and Property was sold.

12.  On March 7, 2011, March 9, 2011, March 16, 2011, April 6, 2012 and November 16, 2012, Plaintiff filed disputes with the credit reporting agencies.  BANA subsequently reviewed the disputes and responded to the credit reporting agencies affirming the reported information.

13.  Between January 2009 and January 5, 2010, BANA never received a written letter from Plaintiff disputing the validity of the debt.

14.  On August 10, 2011, Plaintiff filed a Complaint against BANA and SCLA in the U.S. District Court, Northern District of Mississippi, Case No. 2:11-cv-00169-MPM-JMV, alleging violations of the FDCPA, FCRA and TCPA.

15.  On December 2, 2011, Plaintiff filed the operative Amended Complaint alleging causes of action against BANA and SCLA for violations of the FDCPA, FCRA and TCPA.

16.  On March 15, 2012, Plaintiff served Responses and Objections to BANA's First Set of Interrogatories, First Set of Requests for Production, and First Set of Requests for Admission.

17. On March 29, 2013, counsel for BANA deposed Plaintiff.[9]

The Court concludes that BANA made a *prima facie* showing of entitlement to judgment. Based on its review of Sartori's claims and BANA's UMFs, BANA satisfied its burden of showing there is an absence of evidence to support Sartori's claims and that summary judgment is appropriate as a matter of law.  Sartori then must identify specific facts showing the existence of a genuine issue of material fact.  As stated, mere conjecture, allegations, denials, arguments, and contentions do not satisfy his burden.  Put differently, Sartori's repeated argument that the record fails to show evidence (*see, e.g.,* Doc. 176, at p.5-8) of various matters is not the equivalent of producing actual evidence to raise a genuine issue of material fact.

The Court reviewed Sartori's response and exhibits and finds that, for the most part, he relies on unsupported argument and contention. The majority of Sartori's proposed facts is not supported by any affidavit testimony, answers to discovery requests, or deposition testimony.  For example, in many instances, Sartori states only that he "denies and disputes that Jason Bousliman (Defendant's attorney who executed a declaration) has personal knowledge whatsoever relevant to the case[.]" In addition, Sartori summarily accuses BANA of "bad behavior," muddying the waters, deceit and pretense, intransigence, entering the realm of "pure fantasy," misrepresentation, and acts

---

[9]Sartori's responses to discovery requests and the deposition transcript are attached as exhibits to BANA's filings.

9

of desperation. [Doc. 176, at 1-4.][10] Such unfounded, conclusory allegations shed no light on the issues before the Court and are insufficient to raise a genuine issue of material fact for trial.

The Court also considered Sartori's personal affidavits attached to his response. [Doc. 176, at 35-49.] Sartori, for example, provided an affidavit "in rebuttal to the Declaration of Daniel Leon." In that affidavit, Sartori states he has no information to "show or prove" that Mr. Leon is "an Assistant Vice President; Operations Team Manager ("AVP") at Bank of America, N.A. ("BANA")" and "authorized to sign this declaration on behalf of BANA." [Doc. 176, at 36, ¶ 1.] Sartori further asserts that he has no information to "show or prove" that Mr. Leon is over the age of 18 or has personal knowledge of the statements in Leon's declaration. Mr. Leon's age or position are not in dispute or material to Sartori's claims. Thus, it matters not that Sartori fails to have such information. Moreover, Mr. Leon's sworn declaration provides Sartori with that information, and Sartori does not present evidence demonstrating such facts are untrue or in dispute. In responding to a summary judgment motion, Sartori can and must show *material* facts are genuinely disputed by citing to particular parts of materials in the record, including depositions, documents, affidavits, declarations, stipulations and responses to discovery requests. Fed. R. Civ. P. 56(c).

The majority of Sartori's affidavit testimony is similar, *i.e.,* he states that he is not in receipt of information to "show or prove" statements in BANA's declarations. [Doc. 176, at 36, ¶¶ 3-8;

---

[10]Indeed, when asked to respond to interrogatories and provide evidence in support of his claims and contentions, Sartori's almost routinely set forth objections without providing any supporting evidence. [Doc. 171-4.] As just one example of many, when Sartori was asked to identify all documents that supported his contention that BANA violated the FDCPA, he asserted meritless objections ("assumes facts not in evidence," "requires a legal conclusion," BAC "is subject to equitable estoppel from requesting this information" based on Sartori's position that he requested the information.) Clearly, Sartori has no documents to produce in support of his claims.

Doc. 176, at 40, ¶¶ 1-8.]  Whether or not Sartori is in receipt of such information does not create a genuine issue of material fact for trial.

Sartori's third affidavit, attached to the response, is signed and dated March 29, 2013, the same day BANA took Sartori's deposition. [Doc. 176, at 43 ("Ex. A"); Doc. 171-7, Ex. G (Sartori Dep. Tr.).] According to the transcript, this affidavit was attached to Sartori's deposition as an exhibit. [Doc. 171-7, Ex. G, at 12.] It is not clear how, if at all, the affidavit assists Sartori in creating a genuine issue of material fact with respect to his claims or what Sartori intended in preparing this affidavit for his deposition.  For example, Sartori states in the affidavit that he disputes the alleged debt BAC claimed he owed and that BAC failed to validate the alleged debt.  The mere contention that Sartori disputes something is insufficient to raise a genuine issue of material fact in accordance with Rule 56 requirements.

Sartori's affidavit also provides statements of law, *e.g.,* that the FDCPA requires certain actions on the part of debt collectors.  Sartori's statements in the third affidavit either fail to raise genuine issues of material fact or are nothing more than self-serving, conclusory contentions. [Doc. 176, at 43-49.] Moreover, in Sartori's response, he rarely, if ever, cites his affidavit as evidence of a genuine issue of material fact.

Instead, to the extent Sartori cites to exhibits in his response, those exhibits generally are inadmissible and unexplained.  Exhibit 2, for example, contains very small print, and some dates along with user names.  It is not clear what it is; certainly, Sartori took no steps to demonstrate it is admissible evidence that creates a genuine issue of material fact.  Exhibit 3 consists of four pages of "Loss Mitigation Home Base Work Action History - 174927447."  [Doc. 176, at 52.] Again, even if found admissible, it is unknown how these pages assist Sartori in presenting evidence of a genuine issue of material fact.  Sartori's response cites to a number of other exhibits including a letter dated

11

December 11, 2012 from a "Chief Deputy" to Sartori regarding copies of Power of Attorneys for Deborah A. Nesbitt and Marjorie Mendoza. [Doc. 176-1, Ex. 11.] The exhibit is not admissible evidence and does not demonstrate a genuine issue of material fact. Sartori argues that Ms. Nesbitt had no power of attorney in Valencia County, but this fact, even if established, does not create a genuine issue of *material* fact.

In addition, some pages of Sartori's exhibits are illegible in part, or in their entirety. [Doc. 176-1, at 5-8, 13-15.] Another problem with some of Sartori's exhibits is that they either are not sequential or are missing. In the first portion of his filing [Doc. 176 (69 pages)], the exhibits end with No. 7 (Assignment of Mortgage). The "continuation" of his filing contains another 20 pages of exhibits beginning with exhibit 11 and ending with exhibit 21. There are no exhibits 8, 9, or 10, and yet Sartori's "deposition" affidavit refers to exhibits 8, 9 and 10. [Doc. 176, at 45, 46, ¶¶ 21, 22, 24.] *See* Milton v. Daniels, 2013 WL 1165365, at *3 (10th Cir. Mar. 22, 2013) (unpublished) (observing that district court was "not required to comb through the litigant's filings to find legal nuggets to support his position").

Notwithstanding Sartori's general failures to produce admissible evidence supporting his contentions, the Court analyzes the specific claims in light of BANA's UMFs and Sartori's unsupported argument or contentions.

## Analysis

### I.   FDCPA Claim

The FDCPA prohibits the use of "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). "The FDCPA also establishes specific duties and prohibitions governing debt collector's communications with the debtor, §§ 1692c, 1692g, 1692j." Johnson v. Riddle, 305 F.3d

1107, 1117 n.8 (10th Cir. 2002).  Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).

Sartori contends that BANA violated the FDCPA by attempting to collect a debt without responding to his request for validation of the debt, and by failing to communicate that the debt was disputed.  In his Amended Complaint [Doc. 29, ¶ 15], Sartori claims that BANA sent him a written communication claiming that he owed a debt, and that he contacted BANA via telephone, disputed the debt and requested validation.  In sum, Sartori contends that BANA's action in sending him a written communication and not providing written validation constituted a violation of the FDCPA.

### A.    *One-Year Limitations*

Title 15 U.S.C. § 1692k(d) provides that any action under the FDCPA must be brought "within one year from the date on which the violation occurs."  Sartori filed this lawsuit on August 10, 2011, in the U.S. District Court of the Northern District of Mississippi [Doc. 1], and it was subsequently transferred to this District.

Sartori's FDCPA claims rely on alleged communications beginning in January 2009. [Doc. 29, ¶ 15.] BANA demonstrated through undisputed facts that there were communications or attempted communications between Sartori and BANA in February and May 2009, and that between February 2009 and July 2009, BANA called Sartori at numbers he provided, regarding his loan and the alleged delinquency.  Sartori failed to identify any communications or acts by BANA, or written communications from BANA to Sartori, after January 5, 2010, that might support an FDCPA claim.

Thus, since an action under the FDCPA must be brought within one year from the date the violation allegedly occurs, Sartori had one year from notification of the violation to initiate his action, but he did not file suit until August 10, 2011.  Based on the one-year limitations period, all

13

claims arising out of BANA's alleged attempts to collect a debt from Sartori, that occurred before August 10, 2010, are untimely.

Sartori argues that his FDCPA claim is not time-barred, and yet refers only to communications allegedly occurring in 2009. [Doc. 176, at 15.] As already noted, the allegations pertaining to acts by BANA in 2009 are time-barred.

Sartori also asserts that the one-year limitation period should be tolled until "the date of discovery." [Doc. 176, at 16.] Sartori states he was not aware of collection activity or that his property would be taken until he discovered "Defendants in his credit report in November 2010." [Id.] Sartori's attempted tolling argument defies credulity. After all, Sartori's Amended Complaint alleges that Co-Defendant "sent initial written communication to Plaintiff dated January 2009, in which Co-Defendant claimed a debt owed by the Plaintiff. Plaintiff contacted Co-Defendant via telephone and disputed the alleged debt, requesting written validation." [Doc. 29, at ¶ 15.] Sartori's allegations in the Amended Complaint make it clear that he was aware of Defendants' actions or attempted collection on a debt in 2009. He asserts that because he received no further contact from either Defendant after September 2009, he presumed that the matter was dropped. [Doc. 29, ¶ 17.] Yet, it is uncontested that Sartori was served on September 16, 2009, or earlier, with a Summons and Complaint for Foreclosure. Even if Sartori elected to ignore the lawsuit and sale of his property in January 2010, such decisions to sit by idly and feign ignorance of ongoing legal activity do not erase Sartori's initial information about the debt Defendants were attempting to collect in 2009, the lawsuit that was filed and served on him, or the sale of his property.

In sum, it is uncontested that Sartori's home, foreclosed on for non-payment, was sold on January 5, 2010, bringing an end to BANA's involvement in any debt collection activity. Sartori did not cite any admissible evidence demonstrating that BANA took any action to collect a debt after

14

January 5, 2010.  Therefore, Sartori failed to bring his action against BANA for alleged violations of the FDCPA within the one-year statute of limitations.  *See* Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1189 (10th Cir. 2013) (court declined to reach alternative arguments after determining defendant was entitled to summary judgment on FDCPA claims where plaintiff failed to identify actions taken within the one-year statute of limitations period).  Sartori's FDCPA claims against BANA are time-barred and subject to dismissal.

### B.    *Debt Collector*

Even if the claim is not time-barred, Sartori could not prevail on his FDCPA claim because BANA does not qualify as a "debt collector" under the statute.  The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The definition of a debt collector under the statute does not include a person who collects or attempts to collect a debt "to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

Generally, "creditors, mortgagors and mortgage servicing companies are not 'debt collectors' and are exempt from liability."  Caballero v. Ocwen Loan Serv., 2009 WL 1528128, at *1 (N.D. Ca. May 29, 2009) (unpublished).  *See also* Lewis v. Wells Fargo Bank NA, 2012 WL 4097709, at *10 (Aug. 21, 2012) (unpublished) ("The provisions of the FDCPA apply only to professional debt collectors, not creditors or mortgagors"; thus "a mortgage lender collecting its own debt is not a debt collector under the FDCPA.") (citation omitted); Fitzgerald v. PNCBank, 2011 WL 1542138, at *3 (D. Id. Apr. 21, 2011) (unpublished) (noting courts that have held that "a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA when the debt is not in default at the time the mortgage-holder acquires the debt"); Mansour v. Cal-Western

Reconveyance Corp., 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009) ("Mortgagees and their assignees, servicing companies and trustee fiduciaries are not included in the definition of 'debt collector'") (citations omitted).

>Indeed, Congress committee notes comment on the following exclusion from the definition:

>>[T]he Committee does not intend the definition [of debt collector] to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; the collection of debts, such as mortgages and student loans, by persons who originated such loans; [or] mortgage servicing companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing [.]

U.S. Code Cong. and Admin. News 1977, at 1695, 1698.

It is undisputed that Sartori's loan was not in default when BANA acquired the loan.  BANA began servicing Sartori's loan on February 13, 2008, before it acquired an interest in the mortgage on July 28, 2009.  Because it was servicing Sartori's loan before the loan was in default, BANA does not come within the definition of a debt collector.  Sartori's arguments to the contrary are conclusory and essentially re-state the statutory language demonstrating that BANA is not a debt collector.  [*See* Doc. 176, at 17-19.]  Thus, the FDCPA claims against BANA are subject to dismissal on this ground as well.

### C. *Written Notice*

Title 15 U.S.C. § 1692g requires a debt collector to provide the consumer, within five days after initial communication, with written notice of a debt, including the amount of the debt, the name of the creditor to whom the debt is owed, and additional information.  Further, "if the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt . . . is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt . . . until the debt collector

16

obtains verification of the debt" and the verification is mailed to the consumer.  15 U.S.C. §

1692g(b).  *See* <u>Smith v. Argent Mortgage Co., LLC</u>, 331 F. App'x 549, 558 (10th Cir. May 19, 2009)

(unpublished) (debt collector's duty is only triggered if creditor disputes debt "in writing").

Sartori alleges that, in January 2009, he "contacted [BANA] via telephone and disputed the

alleged debt, requesting written validation."  He further contends that in April 2009, he "again

disputed the alleged debt, demanding written validation and cessation of telephone calls" in

reference to calls BANA made to him.  Sartori asserts that he sent a certified debt validation letter

to BANA and that the evidence shows BANA received his letter in March 2009. [Doc. 176, at 20.]

In support, Sartori cites Exhibit 2 and BANA's response to Sartori's request for admission No. 5.

 Exhibit 2 attached to Sartori's response is virtually unreadable, and does not constitute evidence

that supports Sartori's allegation.  The response to the admission relied upon by Sartori states that

BANA received an undated letter from Sartori.  Similarly, it is not evidence that BANA received

the alleged letter in March 2009.  Indeed, BANA's UMFs demonstrate that between January 2009

and January 5, 2010, BANA never received a written letter from Sartori disputing the validity of the

debt.

Sartori failed to provide admissible evidence showing a written notification to BANA on the

date in question.  Thus, he did not comply with the statutory requirement that a consumer notify the

debt collector in writing within a thirty-day period of the dispute, and the FDCPA claim is subject

to dismissal on this ground as well.

In sum, Sartori's FDCPA claim is time-barred and subject to dismissal on that ground alone.

Alternatively, the claim is subject to dismissal because BANA does not meet the definition of a

"debt collector" under the statute, or because Sartori failed to provide required written notification

of a dispute in accordance with statutory language.  Thus, the Court recommends that Sartori's FDCPA claims against BANA be denied and dismissed, with prejudice.

## II.   FCRA Claim

Congress enacted the FCRA, in part, to protect consumer privacy by limiting the furnishing of consumer credit reports to certain statutorily enumerated purposes. *See* TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001).  "The purpose of FCRA is to ensure accuracy and fairness in credit reporting and to require that such reporting is confidential, accurate, relevant, and proper."  Matthiesen v. Banc One Mortg. Corp., 173 F.3d 1242, 1245 (10th Cir. 1999) (*citing* 15 U.S.C. § 1681).  The FCRA provides, in part, that consumer reporting agencies may furnish a consumer report under specific circumstances and for specific purposes.  15 U.S.C. § 1681b.

Sartori alleges a number of violations of the FCRA in his First Amended Complaint.  He claims that BANA "pulled [his] credit report with no permissible purpose as defined in 15 U.S.C. § 1681b in violation of 15 U.S.C. § 1681b(f)."  [Doc. 29, ¶ 25.] In addition, he asserts that BANA violated 15 U.S.C. § 1681s-2(b) by failing "to correct or validate disputed information to the credit reporting agencies" after he filed a dispute.  [Id., ¶ 27].  Sartori also contends that BANA violated 15 U.S.C. § 1681s-2(b) by furnishing "disputed information to the consumer reporting agencies without notice that the completeness or accuracy of some information is disputed by Plaintiff."  [Id., ¶ 29].  Sartori further alleges that BANA continued to report derogatory information in violation of 15 U.S.C. §§ 1681c(f) and 15 U.S.C. 1681i.[11] [Id., ¶ 20.]

---

[11]According to BANA, Sartori's claims under 15 U.S.C. §§ 1681c(f) and 1681i misstate the statutory requirements.  Section 1681c(f) provides that "[i]f a consumer reporting agency is notified pursuant to [§] 1681s-2(a)(4) of this title that information regarding a consumer who was furnished to agency is disputed by the consumer, the agency shall indicate that fact in each consumer report that includes the disputed information."  BANA asserts that this requirement applies only to consumer reporting agencies and not to lenders or servicers like BANA.  Similarly, § 1681i refers to procedures that consumer reporting agencies

A.    _Alleged Violations of 15 U.S.C. § 1681b(f)_

In DeMaestri v. VeriFacts Inc., 2012 WL 1192758, at *4 (D. Colo. Mar. 16, 2012) (unpublished), the district court noted the requisite elements to establish a violation of the FCRA for obtaining a credit report without a permissible purpose. A plaintiff must prove that (1) there was a consumer report; (2) the defendant used or obtained it; (3) the defendant did so without a permissible statutory purpose; and (4) the defendant was negligent or willful in doing so. Id. (citations omitted).

There is no evidence showing that BANA pulled his consumer report. Indeed, the contention in his Amended Complaint is that Co-Defendant SCLA pulled the credit report. Nowhere in the Amended Complaint did Sartori specifically allege that BANA did so,[12] nor did Sartori provide evidence demonstrating that BANA actually pulled the report.[13] Sartori seems to argue that if SCLA pulled the credit report, it follows that BANA pulled it as well. It does not so follow, and this is nothing more than conclusory argument that is insufficient to raise a genuine issue of material fact.

---

need to follow in case of disputed accuracy of credit reporting. The statutory requirement applies only to consumer reporting to agency, rather than to lenders or servicers like BANA. [Doc. 169, at 10 n.2.] The Court agrees with BANA's position. _See, e.g.,_ Echols v. Morpho Detection, Inc., 2013 WL 752629, at *6 (N.D. Cal. Feb. 27, 2013) (unpublished) (noting that statutory requirement under § 1681c(f) refers to a consumer reporting agency); Poore v. Sterling Testing Systems, Inc., 410 F.Supp.2d 557, 565 (E.D.Ky. 2006) (noting that statutory requirement of § 1681i applies to a consumer reporting agency).

[12]Co-Defendant SCLA admitted that it pulled Sartori's consumer report with a permissible purpose. The Court agreed with SCLA's position in its recommendation that is pending before the trial judge. [Doc. 155.]

[13]Sartori's mere reference to an attached consumer report [Doc. 176-1, Ex. 20] is not evidence that BANA pulled the report. Sartori attached Ex. 20 which states is a "notice to the Home Loan Applicant" (Sartori) in connection "with your application for a home loan." The address at the top left corner of the Notice states "Bank of America Home Loans." [Id.] As best as the Court can determine, this is not evidence that Defendant BANA pulled the report or used it for an impermissible purpose. At a minimum, Sartori's attachment of the Notice does not raise a genuine issue of material fact with respect to the required elements of this claim.

In response to BANA's interrogatory asking Sartori to state each fact supporting his contention that BANA violated the FCRA, Sartori objected and responded as follows:

> [A]s Plaintiff has never had any account or done any business with Bank of America, Plaintiff contends that any reporting by BANA is erroneous and inaccurate . . . . Plaintiff further states that even if an account existed, which Plaintiff denies, Plaintiff's credit reports contain conflicting dates and amounts relating to BANA's claim of an alleged account and alleged debt.   BANA has failed to mark Plaintiff's credit reports in dispute and has failed to remove the reporting or correct other erroneous or inaccurate information.

[UMF No. 16, Interrogatory No. 13.] The interrogatory answer does not show that BANA pulled Sartori's credit report or that BANA pulled it for an impermissible purpose.  Moreover, even if BANA pulled Sartori's credit report, it would be permissible for BANA to do so in order to review the accuracy of his account.  15 U.S.C. §§ 1681b(a)(3)(A)&(F).  Sartori failed to raise genuine issues of material fact in relation to the allegations under § 1681b(f), and they are subject to dismissal.

**B.**   ***Alleged Violations of 15 U.S.C. § 1681b(a)***

In his response, Sartori contends that his Amended Complaint also alleges that BANA/BAC violated 15 U.S.C. § 1681b(a).  Because Sartori claims that BANA did not dispute this claim, he believes "it must be presumed that it is accepted and agreed to by the Defendant." [Doc. 176, at 20.] Sartori's position is unfounded.  The only mention of 15 U.S.C. § 1681b(a) in his Amended Complaint is at paragraph 19, and it relates only to a single Defendant — SCLA.  Thus, the Court rejects Sartori's position that he intended to assert such a claim against BANA and that the claim must proceed to trial based on nothing more than the mere mention of that statute in reference to SCLA.

Sartori failed to present evidence demonstrating a genuine issue of material fact in dispute with respect to the above-described allegations.  Thus, those claims are subject to dismissal.

C.  ***Alleged Violations of 15 U.S.C. § 1681s-2(b)***

The Court next evaluates Sartori's claim under 15 U.S.C. § 1681s-2(b) that sets forth the obligations of a furnisher to a consumer.  There are two components to this provision.

> First, subsection (a) of this statutory section sets forth a "duty of furnishers of information to provide accurate information." § 1681s–2(a).  However, the statute expressly states that the requirements of subsection (a) are only enforceable by government officials. § 1681s–2(d).  As such, courts have readily recognized that no private cause of action exists under § 1681s–2(a). . . .

Morgan v. HSBC Mortg. Services, Inc., --- F.Supp.2d ----, 2013 WL 978691, at *3 (E.D.Ky. Mar. 12, 2013) (citations omitted).

> The second component is subsection (b), which sets forth the "duties of furnishers of information upon notice of dispute." § 1681s–2(b). Subsection (b) is not similarly limited to enforcement by government agencies, a difference which suggests that Congress did intend a private right of action under this component. However, the duties under this section are contingent upon the furnisher of information "receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." § 1681 s2(b)(emphasis added). "This means that a furnisher of credit information ... has no responsibility to investigate a credit dispute until after it receives notice of a dispute from a consumer reporting agency."

Id. at *4 (internal citations omitted).  Here, Sartori did not produce evidence that BANA received notice of a dispute from a consumer reporting agency concerning the completeness or accuracy of information provided by a person to a consumer reporting agency.  Sartori's alleged reporting of such allegations would be insufficient.  Id.  Notification from the consumer is not enough.  Id. (citations omitted).

Moreover, when a consumer disputes the credit information furnished, the credit furnisher has an affirmative duty to conduct an investigation with respect to the disputed information, review the information provided to the credit bureau, and report findings.   15 U.S.C. § 1681s-2(b)(A),(C),(E).  However, a credit agency is not obligated to investigate a dispute if it "reasonably determines that  the dispute is frivolous or irrelevant."  Id. at s-2(b)(F).

Stated differently, for a plaintiff to affirmatively plead a claim for a violation under § 1681s-2(b), this section imposes certain duties on a "furnisher of information."  Sartori was required to allege that BANA, as an information furnisher, failed to conduct a reasonable investigation in response to a notice of dispute from a credit bureau.  Otherwise, such allegations amount to nothing more than an inaccurate reporting claim under § 1681s-2(a), which does not provide a private right of action.  See Morgan, 2013 WL 978691, at *3-4; Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1060 (9th Cir. 2002).

Sartori did not allege any facts which demonstrate that BANA refused to investigate disputed credit information.  Therefore, he neither stated a cause of action under 15 U.S.C. § 1681s-2(b), nor raised a genuine issue of material fact with respect to that claim.  At most, Sartori alleged that he disputed BANA's credit reporting after he discovered BANA "in his credit report."  Sartori contends that the credit reporting agencies, Equifax, Experian and TransUnion reported to him that BANA affirmed the accuracy of its reporting.

As noted above, Sartori argues that he never had an account with BANA, and, therefore, any report by BANA was erroneous and inaccurate, and even if he had an account, his credit report contains conflicting information concerning the account and the debt, and that BANA failed to mark his credit reports in dispute and failed to remove or correct erroneous reporting.  BANA sought to explore this at Sartori's deposition.

For example, BANA specifically asked Sartori how BANA's credit reporting was inaccurate. Sartori maintained that BANA never responded to his dispute, failed to mark the account in dispute, and did not investigate.  He offered no evidence to support a claim that the information BANA furnished was erroneous.  Thus, despite Sartori's allegations, he provided no factual support for his claims that the information was inaccurate.

BANA's uncontested facts demonstrate that it properly reported information regarding Sartori's accounts, and responded to each dispute sent to it by credit bureaus and confirmed the accuracy of the information report.  Accordingly, BANA satisfied its legal obligation to investigate Sartori's dispute, and it provided required information.  There is no basis for any of Sartori's FCRA claims and they are subject to dismissal.  Thus, the Court recommends denial and dismissal of the FCRA claims, with prejudice.

## III.   TCPA Claims

The TCPA makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial pre-record voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).  McCowsky v. First National Bank of Nebraska, 2013 WL 754922, at *7 (D. Colo. Feb. 6, 2013) (unpublished).  In McCowsky, the federal district court stated:

> The federal statute provides a private right of action to persons who have incurred monetary damages as a result of violations of the TCPA, and such actions may be brought in either state or federal court. Mims v. Arrow Financial Services, LLC, ___ U.S. ___, 132 S.C. 740, 753 (2012).  "Thus, to establish a prima facie case under Section 227(b)(1)(A) a plaintiff must show that:  (1) a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient."  Harris v. World Financial

<u>Network National Bank</u> 867 F. Supp. 2d 888, 892 (E.D. Mich. 2012)
(citation and internal quotations omitted).

<u>Id.</u>, *report and recommendation adopted by,* 2013 WL 754779 (D. Colo. Feb. 27, 2013).

Sartori contends that he received weekly telephone calls from April 2009 to July 2009 on his cell phone by an autodialer.  In further clarification, Sartori alleged he began receiving calls in January or February 2009 at phone number (530) 305-3346.  He claims he never provided that number to BANA.

The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system, etc. "to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii).  The law grants the Federal Communications Commission ("FCC") authority to prescribe regulations implementing the TCPA.  47 U.S.C. § 227(b)(2).

In a 2007 declaratory ruling, the FCC found that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone prescriber to be contacted at that number regarding the debt.  23 F.C.C.R. 559, 564. Indeed, the FCC determined that autodialed and prerecorded message calls to wireless numbers, which were provided by the party to a creditor, are permissible because the calls were made with "prior express consent" of the called party.  23 F.C.C.R. at 564.  As the FCC also observed, the restrictions on calls to emergency lines, pagers, etc. does not apply when the called party provided the telephone number of such a line to the caller for use in normal business communications.  <u>Id.</u>

It is undisputed that Sartori provided, in the normal course of business, his cell phone number ending in 3346 for calls concerning the loan.  It is also unchallenged that BANA received

a phone call from Sartori on February 4, 2009, and that in the normal course of business, Sartori provided an updated phone number for BANA to call him concerning the loan at the 3346 cell phone number.  Sartori did not provide evidence that he revoked the consent he gave on February 4, 2009, and he never requested, either verbally or in writing, that BANA stop calling this number.

Under these circumstances, and there being no dispute as to the material facts, BANA demonstrates that Sartori consented to be contacted via the telephone number provided. Consequently, there can be no TCPA claim against BANA.  As there is no evidence of genuine issues of material fact in relation to the alleged violations of the TCPA, the Court need not discuss Sartori's claim for willful violation, as heightened damages can only occur if there is a willful violation.  The TCPA claims are subject to dismissal.  Therefore, the Court recommends that the TCPA claims be denied and dismissed, with prejudice.

**IV.**   **MERS Assignment**

Sartori's main claim is that BANA is a stranger to his loan and property.  He repeatedly argues that MERS lacked the authority to execute the assignment of mortgage, and therefore, BANA had no interest in the property and lacked standing to foreclose.  But, Sartori provided no evidence or facts to support this position.

Foreclosures of property are governed by state law.  New Mexico statutes provide:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 55-3-309 or 55-3-418(d), NMSA 1978.  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

NMSA § 55-3-301.  Comments to this statutory section confirm that a note may be enforced by any "person who under applicable law is a successor to the holder or otherwise acquires the holder's rights."  Official Comment to § 3-302.  *See also* <u>Simson v. Bilderbeck, Inc.</u>, 76 N.M. 667, 670 (1966)) ("Both the note and mortgage were assigned to plaintiff.  Having a right under the statute to enforce the note, he could foreclose the mortgage.") Thus, New Mexico law allows an assignee like BANA to enforce a note.

Sartori intimates that BANA lacks standing to enforce the note, but also expressly agreed in the execution of the mortgage.  For example, Sartori agreed in the mortgage that New Day "and its assigns" could enforce the note by foreclosing the mortgage.  [UMFs 1, 2.] Moreover it is undisputed that the mortgage provides that MERS "is a mortgagee under this Security Instrument."  The mortgage provides, "For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for lender and lender's successors and assigns) and to the successors and assigns of MERS [the subject property]."  It is, therefore, undisputed that Sartori granted MERS the right to foreclose and sell the property.  [<u>Id.</u>]

The closing documents specifically provide that Sartori "understands and agrees that MERS holds . . . legal title to the interests granted by Borrower in this Security Instrument . . . ."  There is simply no dispute that Sartori executed the mortgage and that MERS assigned the mortgage and note to BANA.  This assignment expressly conveyed not only the mortgage but the note.  MERS "hereby assigns said mortgage and the obligation secured to" BANA.  Sartori fails to contest the UMFs demonstrating that the assignment of mortgage showed that the note was also assigned to BANA.  *See* <u>Farmers and Stockmens Bank of Clayton v. Layton</u>, 92 N.M. 246, 247 (1978); *cf. also* Restatement (Third) of Property: Mortgages § 5.4 ("Except as otherwise required by the Uniform

Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise.")

Based on the undisputed facts, Sartori fails to demonstrate that BANA is a "stranger to his loan," and that MERS lacked authority to assign the mortgage and loan to BANA.  Thus, the claims regarding MERS is subject to dismissal.  The Court recommends that any claims brought with respect to the validity of the MERS assignment be denied and dismissed, with prejudice.

### Recommendation

In sum, a review on the merits leaves the Court with the well-supported conclusion that BANA's Motion for Summary Judgment should be granted.  The undersigned Magistrate Judge, therefore, recommends that the trial judge adopt this Report and Recommendation, grant summary judgment in favor of BANA, and dismiss Sartori's Amended Complaint and claims against BANA with prejudice.

Lorenzo F. Garcia
United States Magistrate Judge